JAMES R. MARTIN & others *vs.* CHARLES N. SMITH & others.

Suffolk.    March 7, 1932. — July 2, 1932.

Present: RUGG, C.J., CROSBY, WAIT, & FIELD, JJ.

*Labor Union. Equity Pleading and Practice*, Parties. *Equity Jurisdiction*, Internal affairs of voluntary association.

Upon reservation and report of a suit in equity to obtain an adjudication respecting a genuine conflict of interests between the parties, it appeared that the plaintiffs constituted officers representing the majority membership of an unincorporated local labor union which had received its charter from an unincorporated international union; that, after such charter was granted, an unincorporated district union was formed by certain local unions, including the plaintiff local union, in accordance with provisions of the constitution of the international union; that after a series of disputes as to the authority of the district union to suspend the charter of the local union, in which the international union in convention took a position favorable to the local union, this suit was brought to settle the controversy; that the local union had paid dues in the international union and to the district union and its members had property rights in large funds held for them and other members by the international union; and that the defendants were minority members of the local union and representatives of the district union. The international union was not a party, but no party raised any question as to its not being a party. *Held,* that
(1) The parties were entitled to a court's interpretation of the constitution and laws of the international union and of the district union and to a decision upon their rights under the conflicting jurisdictions;
(2) The international union was a necessary party.
(3) The suit was remanded so that the officers and members of the international union might be made parties.

BILL IN EQUITY, filed in the Superior Court on March 18, 1929, and described in the opinion.

The suit was referred to a master.

Art. XIII of the constitution of the International Typo-

graphical Union of North America reads under the heading, "Trade District Unions," as follows:

"Sec. 1. Any of the allied trades under the jurisdiction of this organization may form a Trade District Union.

"Sec. 2. Such Trade District Union shall have the following powers, privileges and rights, and as may be more specifically set forth in the By-laws:

"(a) To charter, establish and form unions of its craft. Charters to be procured from the International Typographical Union.

"(b) To issue and control traveling cards to members working at its craft.

"(c) To make all laws for the sole government of its craft.

"(d) To decide all matters in dispute solely affecting members of its union.

"(e) To elect officers of the Trade District Union, the President of which shall be a Vice-President of the International Typographical Union.

"(f) To collect and forward to the Secretary-Treasurer of the International Typographical Union all per capita tax due from subordinate unions of its craft.

"Sec. 3. Such powers, privileges and rights shall not work to repeal or affect the laws of the International Typographical Union regarding revenue, per capita tax, benefits, strikes and lockouts, the six-day law, and allied trades council laws."

Other material facts found by the master in a report and a supplementary report, which were confirmed by consent of the parties, are stated in the opinion. By order of *F. T. Hammond*, J., the suit was reserved and reported for determination by this court upon the pleadings, the master's reports and the exhibits referred to therein and thereto annexed.

*J. F. Barry*, (*J. J. Cronin* with him,) for the defendants.

*J. V. Spalding*, for the plaintiffs.

WAIT, J. This matter is before us by reservation, without decision, by a judge of the Superior Court, upon the pleadings, the master's reports and the exhibits referred to

therein and thereto annexed, after entry of interlocutory decrees confirming, by consent, the master's report and supplemental report. Such decree is to be entered ·as justice and equity may require.

Material facts are as follows: The bill is brought by the president, secretary and treasurer of Boston Mailers' Union No. 1, which will hereinafter be referred to as the Local, a voluntary unincorporated association, individually and as representing the members of that Local other than certain members joined as defendants, against the president, the secretary and a vice-president of the Mailers' Trade District Union of the International Typographical Union of North America, a voluntary unincorporated association, which will hereinafter be referred to as the District, individually and as representing the members of the District, and against certain named members of the Local who are also members in good standing of the District. The plaintiffs are not members in good standing of the District. No service was made upon the secretary and the vice-president of the District nor upon one McArdle. By consent, the bill was discontinued as to them without prejudice. A cross bill was filed by the defendant members of both the Local and the District. The president of the District did not join in the cross bill.

The Local received a charter in 1892 from the International Typographical Union of North America which hereinafter will be referred to as the International, a voluntary unincorporated association of printers and mailers with local unions established throughout the United States and Canada. The International claimed jurisdiction over "all branches of the printing and kindred trades, other than those over which jurisdiction has been conceded by agreement." The Local has functioned since that date with a membership made up of mailers, i.e., "men and women engaged in mailing, which is an allied craft of printing, such as the addressing, tagging, stamping, labelling, bundling or wrapping of papers, envelopes, magazines, and similar things." The conditions of this charter were that the Local was to "be subordinate to and comply with all

the requirements of the constitution of the " International, "that it shall not at any time fail to be represented at the annual sessions, and shall for all times be guided and controlled by the enactments passed at such session of the " International. The charter provided, "So long as the said union adheres to the above conditions this charter to remain in full force, but upon infraction thereof the International Typographical Union may revoke said charter, and all privileges secured thereby shall be annulled." In 1902 all local unions of mailers then existing under the jurisdiction of the International held a convention in which the Local was represented by its delegates and formed themselves into the District in accord with art. XIII of the constitution of the International. The District created its own constitution, by-laws, and general laws, has held annual conventions and has functioned, exercising jurisdiction over all matters as provided by art. XIII with the knowledge, consent and approval of the International — at least until 1927. The Local has paid monthly *per capita* tax to the District, attended and participated in its conventions, appealed and referred appeals to the District and, down to 1927, conducted itself as a subordinate of the District. It has also paid monthly dues to the International, reported its financial condition, sent delegates yearly to its conventions, and complied with its orders. It has paid considerable sums to both District and International; and its members have property rights in large funds held for them and other members by the International. In 1909 the Local's charter was revoked by the International in support of an earlier order for suspension by the District based on a failure by the Local to obey an order of the District. On appeal the International convention sustained the action of the District, although the Local then claimed, as it does here, that, because its charter issued before the District existed, the Local possessed local autonomy superior to the District. The order of suspension or revocation, however, was rescinded later in 1909, on compliance under protest by the Local with the order. On appeal the International in convention sustained both

revocation and restoration. Until 1927 the Local functioned in accord with the laws of both District and International. About that year International sought to fall apart from District, and to amend art. XIII out of its constitution. The United States District Court, sustained by a decision of a circuit court of appeals, *Howard* v. *Weissmann*, 31 Fed. Rep. (2d) 689, restrained such action. Art. XIII is printed in the International's book of laws issued in 1929, with the subheading, "(This article in effect by federal court order.)"

The plaintiffs in the original bill, the officers and a majority of the members of the Local are in sympathy with the wishes of the International, and have so conducted themselves in failing to pay dues to the District and, in other respects, in disregard of its laws, that, after appeals to the District convention, the District suspended the charter of the Local and so notified it. On appeal to the president of the International, he rendered an opinion that the District was without authority to suspend the charter; and this opinion has been affirmed by a majority of its executive council and by its convention of 1929. The convention voted that the full rights of the Local to membership in the International be protected. The Local refuses to recognize the authority of the District and has maintained its full relation with the International. It has voted to strike all references to the District from its constitution, by-laws and general laws. A minority of its members, including the plaintiffs in the cross bill, have maintained their standing in the District and are allowed by the District also to remain affiliated with the Local. As so affiliated they continue their relations with International. The Local by its laws has no power to dissolve itself while there are five members dissenting.

The master finds that there is no wrongful conspiracy, but a *bona fide* contest of interests and opinions between majority and minority. The essential questions, all agree, are, "1. Did the District have the final authority to suspend the charter of the Local? 2. Can the Local exist and function as a subordinate mailers' body of the Interna-

tional without the consent of the District?" In our opinion the parties are entitled to a court's interpretation of the constitution and laws of International and District and to a decision upon their rights under the conflicting jurisdictions; but, as was the case in *Montgomery* v. *Richards,* 275 Mass. 553, the International has such an interest that it is a necessary party, and no decision should be made until it has been brought before the court and given opportunity to be heard, or until the bills are taken as confessed against its members. As was said in *Lawrence* v. *Smith,* 201 Mass. 214, 215, "It is a fundamental principle of equitable procedure that a court will not proceed to a final determination, which may affect third persons, without causing them to be made parties to the bill in order that after a hearing, at which they have had their day in court, their claims may be adjudicated." The court may refuse to act although, as here, neither party actually before the court has raised the point. Justice and equity require that the International be heard, if it desires, where its constitution and laws are seriously challenged. The case is remanded that the officers and members of the International be brought before the court, and, pending further action, that such order for temporary injunction be made as the Superior Court may determine.

*Ordered accordingly.*